The bill states that a certain Laban Berthel, on the 12th of March. 1798 being seised in fee of a tract of land containing one hundred and fifty acres, executed a deed by which, after disposing of his personal estate, he disposed of the land in the following clause: "Also I give after my death, and the death of my wife Mary Berthel, all the tract or parcel of land which I now live on, which was granted to me by deed by William Berthel, — bearing date the 18th day of July, 1797, for one hundred and fifty acres, be the same more or less, — to be equally divided amongst all my aforesaid children: being Willis Berthel. Rhoda Berthel, Enos Berthel, and Mary Berthel, to them and their heirs for ever." The said Laban soon afterwards died; and his widow, Mary, intermarried with one Kinchin Carter, who afterwards, being indebted to several persons, judgments were recovered against him, and executions thereon were levied on the land aforesaid. Under which, the interest of his said wife Mary, so long as ho lived, and that continued, was sold to one Josiah Wells, the highest bidder; who on the 25th of September, 1807, sold to the complainant for the consideration of $400, paid; and the sheriff, on the 13th of September, 1808, executed to him a deed by order of said Wells, which deed by the sheriff specified that he conveyed to the complainant all the right, title, and interest of the said Carter and Mary his wife, for and during the natural life of the said Mary. The bill further states that on the 13th of December, 1800, the said Carter and wife executed a deed for thirty acres to the complainant, parcel of the above one hundred and fifty acres. And that by virtue of these deeds he entered and *Page 230 
occupied the same peaceably. That afterwards he purchased, from two of the children of the said Laban, all the right, title, and interest which accrued to them in the land aforesaid, by virtue of the deed from their father, Laban, and received their conveyances accordingly. This bill further states that David Shelby, the defendant to this bill, claiming the interest of the other two children of the said Laban in the said land by purchase from them, did, on the first of February in the year 1816 enter on a part of the premises without the knowledge or the consent of the complainant; and, under color of his said purchase, has out down valuable timber and wood, and carried it off the premises for his own use; and also cleared ten or twelve acres of the land, and still continues to occupy and possess the same, to cut and carry away the timber and wood, alleging that the deed aforesaid of the said Laban gave his wife Mary no estate for life or any other interest in said land.
The bill further states that, independent of the said deed, the said Mary is entitled to dower on the premises; find prays that the said David Shelby may be enjoined from cutting down and carrying away any more of the timber and wood, that he may be compelled to make compensation for the trespass, and to deliver up the possession.
To this bill the defendant David Shelby has demurred, and for causes of demurrer says that it appears by said bill that said Carter and wife never had any title to the premises, or any title that ever vested in the complainant. Secondly, that the complainant has no title to the premises mentioned in the bill. or. if he has any title, it is a matter triable at law.
On the first ground of the demurrer, it was argued in this case that nothing by the deed of Laban Berthel passed to him or to his wife. That saying therein "I give after my death and the death of my wife, to my children," is binding an estate of freehold to *Page 231 
commence in future, which the rule and policy of the law will not admit. That here is no previous estate to support the interest or estate intended to be given to the children as a reminder. For that every gift or grant requires proper parties as donor and donee, grantor and grantee, which do not exist here, being only husband and wife; and a man can not give to himself, and for the same reason he can not give to himself and wife. For, in contemplation of law, they constitute one person. This may be correct when applied to feoffment at the common law, but not when applied to a covenant to stand seised, operating under the statute of uses. In a covenant to stand seised a freehold may commence in future, for the Court in conveyances to uses, in order to support limitations when no particular estate has been granted, has raised a particular estate by implication; thereby establishing a maxim of equity, that so much of the use as a man does not dispose of remains with him. As a grant to the use of B., to commence four years from thence, is good; for, till the expiration of the four years, the use results to the grantor. So, if a man covenants to stand seised to the use of his own heirs of his own body, the grant is good, and, until it takes place, the use results. Sanders on Uses, 133. By the common law a man could not make a conveyance or give livery of seisin to himself; but he may by way of use, as a feoffment to another for his use, a lease, or release to another for his use, and the like; in such case, the limitation of the use is good, and the statute executes it on himself. A man may covenant to stand seised to the use of himself. Sand, 130. Two questions, then, arise under this deed. First. Is it is covenant to stand seised? Secondly, Is there a limitation to Laban Berthel, himself and wife, for life? No particular form of words is necessary to constitute a covenant to stand seised. The consideration is the chief requisite to characterize and to support it as such a conveyance. This *Page 232 
consideration is blood and marriage. It is here to be observed that, if the consideration appears upon the deed, though there be no express words of consideration, yet it is sufficient to raise an use by way of covenant, as if a man covenants to stand seised to the use of his son, daughter, wife, c., without saying in consideration of the natural love and affection he bears towards them, this covenant is capable of raising an use. In the present case, the father gives to his children, naming them, and it is apparent, from the subsisting relation or parent and child, that it is for the natural love and affection which he bears them, without expressing it in so many words, that he makes the gift, and so the law construes it. Sand on Uses, 438. The words grant, bargain, sell, enfeoff, confirm, are considered equally operative as the words "covenant to stand seised," and pari ratione, must the word used in this deed to wit, give, a word more consonant to the nature of this particular transaction and the truth of the case, than some of those mentioned as sell, c. From this view of the deed set forth in the bill, it may be with propriety considered as a covenant to stand seised.
Secondly, is the life-estate given by this deed to Laban Berthel and his wife Mary? and here the question is properly, what was his intent? For the intent will direct the use, so as to be executed by the statute, as in the case 4 Term Rep. 1, 77, where the reservation showed the indent of the parties to reserve a life-estate. In the present case the donor, Laban Berthel, gives "after his own death, and the death of his wife, to his children." Many circumstances appear upon the face of this deed to show the intention to be the reservation of a life-estate to himself, and then to his wife. One circumstance is, the time the grant to the children was to take effect in possession, and be enjoyed by them; to wit, when he could no longer possess and enjoy it, himself or his wife. It *Page 233 
can not reasonably be presumed that he intended to turn himself and his wife out of doors during their lives: and in advanced life to struggle for support, or at the least undergo the labor and fatigue of a new establishment. Another circumstance shown on the face of the deed giving force to this reasoning, is that the premises given constitute his dwelling, his plantation; and it does not appear he had any other. Again, the whole of the tract is given, no part is reserved, from which it might be inferred he intended to move. Add to all this that the dispositions of his deed, particularly those to the children, are such as to contemplate the point of time when a final disposition of property is made, and when a farewell is taken to all worldly thing's, no further use for it by the disposer being in his mind beyond the period then in view. From all these circumstances combined, the intent seems to be plain, clear, and unequivocal: the law is that where the intent is apparent in the deed it directs the limitation of the uses. Lord Kenyon on the above cases, from 4 Term Rep. 181, seemed inclined to go further in ascertaining the intention, by adverting to the circumstances beyond the deed and subsequent thereto. Putting this limitation then into legal order, it is a. covenant on the part of the grantor to stand seised to the use of himself for life; then to the use of his wife for life, and then to the use of his children in fee; all which uses are executed by the statute, and have become legal estates. The law, then, according to the intent apparent in the deed, will raise the uses to be executed; so moulding and arranging them, that all shall be converted into legal estates according to the intent. The law will also construe the instrument to be of that denomination, which will admit of such arrangement, no matter what the parties may have called it. By the intermarriage in the present case, between Carter and the widow, the husband became entitled to the wife's estate for life so long as he lived, *Page 234 
and that continued. And by the judgments and executions against the husband and the subsequent conveyances to the complainant they became vested in him; and that the residue of the said Mary's estate beyond her husband's life belongs to herself. And it is to be taken upon this bill that both she and her husband are yet living. The estate of the complainant is then yet continuing, and, as to thirty acres, will continue as long as she lives, unless sooner determined by some act in law amounting to a forfeiture.
On the second ground of demurrer the complainant alleges that the defendant claiming one-half of the lands in fee by purchase, from two of the children, hath entered on part of them and taken possession, cut down a quantity of timber and carried it away. For this the complainant wishes him to account, and in some cases such accounts under such circumstances have been decreed. 1 Bro. Ch. C. 194; 3 Bro. Ch. C. 37. These cases have not been laid before us, they must however have been decided, where either the title of the complainant was admitted or had been established in a trial at law. A court of law is the proper forum for the examination and establishment of a legal title. Not a court of equity, which is conversant only with equitable titles, which courts of law do not meddle with. The supposed equitable nature of the complainant's title is the foundation of this bill, and that fails when this court is of opinion, as it clearly is, that his estate is a legal, not an equitable one. When he shall have sued at law, and shall have overcome all opposition, then we shall be able to see whether he is entitled to satisfaction for this timber so far as his interest extended. But is it right to order the defendant to answer as to timber cut, when we do not know that he will be sued at law by ejectment, or, if sued, what will be the event? Who can tell as this stage of the business what releases, antecedent conveyances, or other defences he may have? Shall we before he has had an opportunity to produce *Page 235 
them, and have them brought to the legal standard, proceed as if all had been already investigated and settled? If we do so we may have to retrace our steps after progressing far in the cause, when it may eventually be discovered that, for some reason not perceived by this court, the title of the complainant may be overset. Of what use will it be to retain the cause at this stage of it until after a trial in ejectment? Should any difficulty arise not now anticipated, as to the timber, then it will be time enough to take an account upon a bill filed for that purpose. The bill ought not to be retained upon a. mere possibility that such difficulties may arise. See 1 Atkyns, 524; 1 Ves. 232, 521; 2 C. D. Chancery, 2 A, 2.
Therefore let the demurrer be sustained, and the bill be dismissed with costs.