## JAMES E. MURRAY AND THOMAS F. MURRAY vs. JOHN A. KERNEY.

*Deeds conveying land; covenants to stand seized.*

Four sisters, the joint owners in fee of a lot of ground, executed and acknowledged an agreement concerning the same, with all the formalities required for the execution and acknowledgment of deeds conveying real estate, and after reciting their joint ownership and describing the property, declared its object to be "that in case that death should take one of the parties, the other three sisters are the owners, and if two are taken by death, then the two remaining sisters are the owners, and if by death one of the two sisters is taken then the last surviving sister is the owner." *Held,* that by this deed each one covenanted to stand seized of her interest therein to her use for her life and upon her death to the use of such of her sisters as survived her, successively to and including the last survivor, who became seized thereby in fee of the interest of all the sisters in the lands.        pp. 519-520

Where the intent of the grantor to these lands is apparent, if for any reason the deed or instrument by which the transfer of title was intended to be affected can not operate in the way contemplated, the Court, if possible, will give it effect in some other way.                        p. 518

If an instrument in writing intended to convey land should be inoperative as a common law deed, it may be effective as a covenant to stand seized to uses under the Statute of Uses.

p. 518

A covenant to stand seized to uses is a covenant by which one seized of lands covenants in consideration of blood and marriage that he will stand seized of the same for the use of his child, wife or kinsman for life in fee.        p. 518

No particular word or form of words is necessary to constitute
a covenant to stand seized; the consideration is the chief
requisite to characterize and support it.               p. 518

But it must, of course, be by deed, in order to constitute a cove-
nant.                                                   p. 519

*Decided April 26th, 1911.*

Appeal from the Circuit Court of Baltimore City (Niles,
J.).

The cause was argued before Boyd, C. J., Pearce,
Thomas, Pattison and Urner, JJ.

*Charles S. Hayden,* for the appellant.

*C. Alexander Fairbank,* for the appellee.

Pattison, J., delivered the opinion of the Court.

In this case the appellee, plaintiff below, filed his bill alleg-
ing that he was the owner, in fee simple, of a lot of land
in Baltimore City, situated at the corner formed by the inter-
section of the west side of Central avenue and the southeast
side of Gay street, that he had acquired from one Jane J.
Murray by deed dated September 13th, 1905.

The bill alleges that Jane J. Murray acquired title to this
property by written agreement executed on the 2nd day of
December, 1885, by the said Jane J. Murray and her three
sisters who were at the time owners of said lands as tenants
in common. The agreement was executed and acknowledged
by them with all the formalities required in the execution
and acknowledgment of deeds and was duly recorded, and is
as follows:

"We, the undersigned, daughters of the late Peter and Eliza-
beth Murray, named and subscribed to this instrument of writ-
ing, do enter into an agreement that for the benefit of each and
all of them named and subscribed to this agreement and are

now living in and owners jointly the property being their joint interest left them, Lucy A. Murray, Ann Murray, Sarah A. Crawford and Jane J. Murray, as heirs of the above Peter and Elizabeth Murray, property situated on the southwest corner of Gay and Canal streets (now Central avenue); the object of this is that in case that if by death should take one of the parties, the other three sisters are the owners, and if two are taken by death, then the two remaining sisters are the owners, and if by death one of the two sisters is taken then the last surviving sister is the owner, and in order to carry faithfully this agreement, we hereunto set our hands and seals and subscribe our names this second day of December, in the year eighteen hundred and eighty-five."

The bill further alleges that the three sisters all died in the lifetime of Jane J. Murray, leaving her surviving them, the owner, as it alleges, of said property under and by virtue of said agreement, and that she died on the 26th day of January, 1908. The bill also alleges that said property, for a long time prior to the acquisition of it by the plaintiff, was occupied by him and was in his possession at the time of the filing of the bill. That at the time of the death of the said Jane J. Murray, she was seized of the property adjoining the property so acquired by him, which was also embraced in the property mentioned and described in the agreement above mentioned, signed by the said Jane J. Murray and her sisters aforesaid, and which her heirs, after her death, agreed to sell to the North Gay Street Permanent Building and Loan Association of Baltimore City, but upon examination the purchaser was not satisfied with the title of Jane J. Murray thereto, its objection being based upon the sufficiency of the agreement above given to pass title to her in said lands, and proceedings were instituted in the Circuit Court for Baltimore City "for the sale of said property and the ratification of the contract of sale to the said corporation, which proceedings have long since been completed and the title of said adjoining property conveyed to the said corporation."

As the legal sufficiency of the title of Jane J. Murray in and to the lands sold as aforesaid had been questioned, the plaintiff thought it best, as he alleges, to have executed to him, by the heirs of Jane J. Murray, a confirmatory deed for the property so conveyed unto him by her as aforesaid. To this end he called upon the heirs to execute the confirmatory deed and all of them executed the same except the defendants, who refused to do so. It was then that he determined to file the bill asking the Court, as he did, to construe said agreement and by its decree "remove any cloud which might exist or be supposed to exist" upon his title to said lands.

The defendants Mary J. Murray and William A. Murray answered, stating that as to the construction of the paper writing or agreement mentioned in the bill, and as to the relief prayed therein, they consented to and desired that the Court should pass such decree as to it might seem just and proper in the premises. The other defendants, James E. Murray and Thomas F. Murray, also answered neither admitting nor denying the things alleged in the bill, but requiring proof thereof.

To these answers the general replication was filed, and the testimony of the plaintiff alone was thereafter taken, which substantially sustains the allegations of the bill.

The question presented by this appeal is, did Jane J. Murray, the survivor of the sisters, who were, as it is conceded, at the time of the execution of the paper writing above set forth, the owners of said land involved in these proceedings as tenants in common, acquire their interest therein under and by virtue of such written agreement?

It is not difficult to ascertain the meaning of said paper writing. It was evidently the purpose and intention of the sisters that they should continue to own said property so long as all of them should live, and upon the death of any of them the three surviving sisters should be the owners of said property, and upon the death of the second sister the two surviving sisters should be the owners thereof, and upon the death of the third sister the surviving sister was to become the

owner of the entire interest formerly held by the four sisters, or the owner of the property. But is this instrument of writing legally sufficient to effect the purpose and meaning aforesaid? "Where the intent of the grantor to pass the land is apparent, if for any reason the deed or instrument by which the transfer of title was intended to be effected can not operate in the way contemplated by the parties, the Court, if possible, will give it effect in some other way, and judges have been very astute in such cases in their endeavors to make the conveyance operative one way or the other to carry into effect the intention of the grantor or donor." *Bank of U. S.* v. *Houseman,* 6 Paige's Ch. (N. Y.) 534.

If for any of the reasons assigned by the appellant the instrument of writing mentioned in this case should be inoperative as a common law deed, we think that it is effective as a covenant to stand seized to uses under the Statute of Uses.

Blackstone defines a covenant to stand seized to uses as "A species of conveyance by which a man seized of lands, covenants in consideration of blood and marriage that he will stand seized of the same to the use of his child, wife or kinsman, for life, in tail, or in fee. But this conveyance can only operate when made upon such weighty and interesting considerations as those of blood and marriage." *Book* 2, 338.

"No particular word or form of words is necessary to constitute a 'covenant to stand seized.' The consideration is the chief requisite to characterize it and to support it as such a conveyance. This consideration is blood and marriage. If the consideration appears in a deed, though there be no express words of consideration, yet it is sufficient to raise a use by way of conveyance." *Barry* v. *Shelby,* 5 Tenn. (4 Hayw.) 229, 231.

LORD COKE, in treating the Statute of Uses, says: "The intention of the parties is the principal foundation of the creation of uses," and in *Slay* v. *Mehan,* 1 Lewt. 782, the Court says: "There is no covenant that admits of such a variety of words as that of a covenant to stand seized." *Hayes* v. *Kershaw,* 1 Sanford (N. Y.), 263.

The covenant must, of course, be by deed in order to constitute it a covenant; and the usual term employed in creating it is "covenant," though any other words may be adopted which are tantamount thereto." 2 *Washburn on Real Property,* sec. 1379.

The deed or instrument of writing that was before the Court in the case of *Fish* v. *Strickler,* 10 Penn. 348, was as follows: "Now, know ye, that we, the said Jacob Strickler and Christian Strickler, have this day agreed with each other, that in case if one of them shall happen to die unmarried, or intermarried and without lawful issue or issues that should arrive to the age of twenty-one years, that then and in that case the survivor of them shall be the sole heir of the deceased one both to the real and personal estate of the deceased, without any further deed or conveyance; to hold the real estate as well as the personal estate of the deceased unto the survivor and to his heirs and assigns forever." The Court in adopting the opinion of the lower Court said: "The instrument of writing set forth in this case is what is technically called a covenant to stand seized to uses. The words are sufficient to create the covenant, the intention being apparent on the face of the deed, that each party should stand seized to the use of the other surviving him, under the circumstances stated. And the consideration of natural love, though not expressed, is manifest from the relation of the parties. *Milbourn* v. *Salkeld,* Willes, 673; *Bedell's Case,* 7 Rep. 40; *Crossing* v. *Scudamore,* 1 Ventr. 137; 3 *Cruise's Dig.,* Part IV, 186-190."

In this case, as it is conceded, the four sisters were seized in fee, as tenants in common, of the lands in question, and being so seized executed the deed or agreement above set forth. Each was seized of a one-fourth undivided interest in said land and by this deed or instrument of writing each covenanted to stand seized of her interest therein to her use during her life, and upon her death to the use of such of her sisters as survived her, successively to and including the

last survivor, who became seized thereby, in fee, of the interest of all the sisters in said lands.

From what we have said we do not think the Court below erred in its ruling and will therefore affirm its decree.

*Decree affirmed, with costs to the appellee.*